IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO.<br><br>COMPLAINT |
| v. | ) ) ) ) | JURY TRIAL DEMAND |
| MARKET AMERICA, INC. | ) ) ) | |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation and to provide appropriate relief to Audrey Murphy, who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff, the U.S. Equal Employment Opportunity Commission (the "EEOC" or "Commission"), alleges that defendant Market America, Inc. ("Defendant"), discriminated against Audrey Murphy by subjecting her to a sexually hostile work environment because of her sex, female, and discharging her in retaliation for engaging in a protected activity.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section

1

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and 2000e-6 ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, has continuously been a North Carolina corporation doing business in the State of North Carolina and the City of Greensboro, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Audrey Murphy filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On June 12, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On July 25, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. As described in greater detail below, from at least February 2018 until on or about September 10, 2018, Defendant engaged in unlawful employment practices at its location in Greensboro, North Carolina, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)-(2)(a)(1). Specifically, Defendant subjected Audrey Murphy ("Murphy") to severe or pervasive sexual comments and conduct that created a sexually hostile work environment on the basis of her sex, female. The comments and conduct were unwelcome to Murphy and were committed by two male co-workers. Defendant further

discriminated against Murphy when it terminated her employment because she engaged in a protected activity.

13. On or about February 27, 2012, Murphy began working for Defendant as a Warehouse Associate.

14. Beginning in or around February or March 2018, and continuing until around July 5, 2018, two male co-workers (hereafter "Co-Worker 1" and "Co-Worker 2") made unwelcome, sexually offensive comments toward Murphy or in her presence on at least a weekly or almost weekly basis.

15. The sexual comments made by Co-Worker 1 and/or Co-Worker 2 included for example, telling Murphy she had some "good pussy"; expressing interest in "running train" on Murphy (sexual encounter involving the two co-workers and Murphy) with Murphy; asking Murphy to sit on Co-Worker 1's lap so he could feel how soft her buttocks is; asking Murphy to sit on Co-Worker 1's lap to make Co-Worker 1 feel better; and asking Murphy to "bend over" in front of Co-Worker 1.

16. Between approximately February 2018 and July 4, 2018, Co-Worker 2 touched Murphy's buttocks on one occasion.

17. On one or more occasions between February 2018 and July 4, 2018, Murphy complained to the Assistant Manager of Defendant's Distribution Center ("Assistant Manager") about Co-Worker 1's sexually offensive and harassing comments and conduct.

18. On one or more occasions between February 2018 and July 4, 2018,

Murphy complained to the Assistant Manager about Co-Worker 2's offensive and harassing comments and conduct.

19. Defendant knew or should have known about Co-Worker 1's sexual comments and conduct because Murphy complained to the Assistant Manager.

20. Defendant knew or should have known about Co-Worker 2's sexual comments and conduct because Murphy complained to the Assistant Manager.

21. Despite having knowledge of the sexual harassment of Murphy by her two male co-workers, Defendant failed to take prompt and effective action to stop the sexual comments and conduct that the male co-workers were subjecting Murphy to on or prior to July 5, 2018.

22. On or about July 5, 2018, an incident involving the two male co-workers and Murphy occurred in Defendant's employee breakroom as described in paragraphs 23 to 30 below.

23. Co-Worker 1 was in the employee breakroom when Murphy entered the breakroom.

24. After Murphy entered the breakroom, Co-Worker 1 approached Murphy and physically lifted her entire body off the ground without her permission.

25. Co-Worker 1 put Murphy over his shoulders and turned Murphy upside down such that her buttocks was near his face and her head was in a downward position.

26. While Co-Worker 1 was holding Murphy, Co-Worker 2 entered the breakroom.

5

Case 1:19-cv-00890-CCE-JEP    Document 1    Filed 09/03/19    Page 5 of 11

27. Co-Worker 1 told Co-worker 2 to come feel how soft Murphy's buttocks is.

28. Co-Worker 2 touched Murphy's buttocks with his hand.

29. Co-Worker 2 squeezed Murphy's buttocks and rubbed his hand against the area of Murphy's pants covering her vagina.

30. During the breakroom assault, Murphy screamed, kicked, and repeatedly told Co-Worker 1 and Co-Worker 2 to stop and not to touch her.

31. On or about July 6, 2018, Murphy notified the Assistant Manager, Defendant's Director of Human Resources ("HR Director") and Defendant's Vice President of Operations ("VP of Operations") that on July 5, Co-Worker 1 had picked her up in the breakroom without permission and Co-Worker 2 had touched her body in a sexual manner without her permission.

32. On or about July 6, 2018, Murphy notified the HR Director and the VP of Operations that on and prior to July 5, Co-Workers 1 and 2 had made unwelcome, sexually inappropriate comments to Murphy.

33. On or about July 27, 2018, Murphy submitted a written statement to the HR Director formalizing her July 6 complaint concerning Co-worker 1 and Co-worker 2.

34. After Murphy complained to the HR Director and the VP of Operations, Co-Worker 1 admitted to Defendant that he picked Murphy up and put her on his shoulders.

35. After Murphy complained to the HR Director and the VP of Operations, Co-Worker 1 admitted to Defendant that Co-Worker 2 touched Murphy's buttocks.

36. On or about August 22, 2018, Murphy filed criminal charges against Co-Worker 1 and Co-Worker 2 based on the July 5 breakroom assault.

37. Defendant had notice that Murphy filed criminal charges based on the July 5, 2018 breakroom incident.

38. On or about September 4, 2018, a third male co-worker ("Co-Worker 3"), pushed Murphy from the rear, placing his hands near her waistline, while leaving the break room.

39. Murphy submitted a written complaint to Defendant concerning the September 4, 2018 incident with Co-Worker 3. Specifically, Murphy wrote she did not like to be touched and again asked Defendant to take action to ensure that her co-workers kept their hands to themselves.

40. On or around September 7, 2018, Murphy approached Co-Worker 3 and explained that she did not like to be touched in light of the July 5 assault described above.

41. Co-Worker 3 informed the HR Director that Murphy had approached him and told him she did not like to be touched in light of the breakroom assault involving Co-Worker 1 and Co-Worker 2.

42. On or about September 7, 2018, the HR Director prepared handwritten notes concerning the situation between Murphy and Co-Worker 3.

43. The HR Director's handwritten notes state "feels like she is building a case-file lawsuit."

44. On or about September 10, 2018, Defendant terminated Murphy. Prior to

Murphy's July 6, 2018 complaint, Defendant had no intent to discharge Murphy.

45. Prior to Murphy's August 22, 2018 filing of criminal sexual assault charges against her male co-workers, Defendant had no intent to discharge Murphy.

46. Prior to Murphy's September 2018 complaint related to male Co-Worker 3 touching her, Defendant had no intent to discharge Murphy.

47. Defendant subjected Murphy to a sexually hostile work environment based on her sex, female, while she was employed with Defendant.

48. Defendant discharged Murphy in retaliation for engaging in activity protected under Title VII. Specifically, Defendant discharged Murphy because she complained about a sexually hostile work environment.

49. The effect of the practices complained above has been to deprive Murphy of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, female.

50. The effect of the practices complained above has been to deprive Murphy of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in a protected activity.

51. The unlawful employment practices complained of above were intentional.

52. The unlawful employment practices complained above were done with malice or with reckless indifference to Murphy's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, successors, assigns, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Audrey Murphy whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Murphy, or front pay in lieu thereof.

D. Order Defendant to make Murphy whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices.

E. Order Defendant to make Murphy whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Murphy punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 3rd day of September, 2019.

                                        EQUAL EMPLOYMENT
                                        OPPORTUNITY COMMISSION

                                        SHARON FAST GUSTAFSON
                                        General Counsel

                                        JAMES L. LEE
                                        Deputy General Counsel

                                        GWENDOLYN YOUNG REAMS
                                        Associate General Counsel
                                        131 M Street, NE
                                        Washington, D.C. 20507


                                        s/ Lynette A. Barnes
                                        LYNETTE A. BARNES
                                        (NC Bar 19732)
                                        Regional Attorney

                                        s/Ylda M. Kopka
                                        YLDA M. KOPKA
                                        (Ill. Bar No. 6286627)
                                        Supervisory Trial Attorney
                                        Charlotte District Office
                                        129 W. Trade Street, Suite 400

Charlotte, NC 28202
Tel: (704) 954-6470
ylda.kopka@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**